OPINION *Page 2 
{¶ 1} Appellant Gary Coats appeals his conviction in the Stark County Court of Common Pleas on one count of trafficking in drugs, a felony of the fifth degree, in violation of R.C. § 2925.03(A).
 {¶ 2} Appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 3} In July of 2006, Lieutenant James Hilles and Detective Todd Aderholf of the Alliance Police Department were investigating an address on South Seneca Avenue in Alliance, Stark County, Ohio. Lt. Hilles had received information that the resident, a woman named Gail, was permitting others to sell crack cocaine out of her home in exchange for crack cocaine. (T. at 79-80)
 {¶ 4} On July 26, 2007, a confidential informant, Gary Deack, was sent to Gail's house to identify who was selling cocaine at said house and also to make a purchase of crack cocaine. Id.
 {¶ 5} Deack met with Lt. Hilles and Det. Aderholf before going to the house. The officers fitted Deack with a body camera, and also put a camera in Deack's car. The cameras allowed the officers to monitor Deack by both sight and sound from another location, and to record the entire transaction. The officers provided Deack with two twenty dollar bills to purchase crack cocaine. The bills had been photocopied before they were provided to Deack. (T. at 80-83).
 {¶ 6} Deack drove to Gail's house and went inside. Gary Coats came downstairs a few minutes later and offered to obtain crack cocaine for Deack. The two men got into Deack's car, and Coats directed Deack to several houses without success. *Page 3 
Finally, at the last house, a man named Leroy Williams got into the backseat of Deack's car. Coats gave Williams the $40.00 that Deack had given him, and Williams gave Coats three rocks of crack cocaine. Coats kept one rock as payment for "brokering" the deal, and gave the remaining two rocks to Deack. Deack dropped off Williams and Coats, and went to meet Lt. Hilles and Det. Aderholf. (T. at 101-105).
 {¶ 7} Lt. Hilles took possession of the two remaining rocks of crack cocaine and sent them to the crime lab for analysis. (T. at 89-90).
 {¶ 8} Jay Spencer of the Canton-Stark County Crime Lab later confirmed that the substance Deack purchased from Coats was indeed crack cocaine, which weighed .21 grams. (T. at 112).
 {¶ 9} On January 23, 2007, the Stark County Grand Jury indicted Appellant Gary Wayne Coats on one count of trafficking in cocaine and/or aiding or abetting another in trafficking in cocaine.
 {¶ 10} Appellant entered a plea of not guilty and on June 12, 2007, the case proceeded to jury trial.
 {¶ 11} At trial, the State presented three witnesses: Lieutenant James Hilles of the Alliance Police Department, confidential informant Gary Deack and Jay Spencer of the Canton-Stark County Crime Lab.
 {¶ 12} Appellant did not present any evidence.
 {¶ 13} After both the State and the defense had rested, Appellant moved to strike language from the jury instructions regarding aiding and abetting. Appellant claimed that since the bill of particulars did not contain the aid and abet language, including such language in the jury instructions would be highly prejudicial to him. The trial court *Page 4 
overruled the motion noting that the aid and abet language was contained in the indictment and further, that Appellant had been provided with a complete copy of the video of Deack's drug buy.
 {¶ 14} The jury returned a verdict of guilty, and Appellant was sentenced to twelve months incarceration.
 {¶ 15} Appellant now timely appeals his conviction and sentence, raising the following assignments of error:
 ASSIGNMENTS OF ERROR {¶ 16} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 17} "II. THE TRIAL COURT'S [SIC] ERRED IN ALLOWING THE STATE TO AMMEND [SIC] THE INDICTMENT AFTER ALL OF THE EVIDENCE WAS INTRODUCED AND THE APPELLANT RESTED HIS CASE.
 {¶ 18} "III. THE THE [SIC] APPELLANT WAS DEPRIVED OF DUE PROCESS OF [SIC] BY THE MISCONDUCT OF THE PROSECUTOR."
 I. {¶ 19} In his first assignment of error, Appellant maintains that his conviction is against the sufficiency of the evidence and against the manifest weight of the evidence. We disagree.
 {¶ 20} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by State v. Smith, *Page 5 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." State v. Thompkins, supra at 78 Ohio St.3d 390.
 {¶ 21} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, superseded by the State constitutional amendment on other grounds as stated in State v. Smith (1997),80 Ohio St. 3d 89.
 {¶ 22} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Thompkins, 78 Ohio St.3d at 386.
 {¶ 23} The Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 {¶ 24} "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, *Page 6 
finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211,72 L.Ed.2d 652.
 {¶ 25} "Both C.E. Morris Co., 54 Ohio St.2d 279, 8 O.O.3d 261,376 N.E.2d 578, and Thompkins instruct that the fact-finder should be afforded great deference. However, the standard in C.E. Morris Co. tends to merge the concepts of weight and sufficiency. See State v. Maple
(Apr. 2, 2002), 4th Dist. No. 01CA2605, 2002 WL 507530, fn. 1; State v.Morrison (Sept. 20, 2001), 10th Dist. No. 01AP-66, 2001 WL 1098086. Thus, a judgment supported by "some competent, credible evidence going to all the essential elements of the case" must be affirmed. C.E. MorrisCo. Conversely, under Thompkins, even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings. State v.Thompkins, 78 Ohio St.3d 380, 678 N.E.2d 541. Thus, the civil-manifest-weight-of-the-evidence standard affords the lower court more deference then does the *Page 7 
criminal standard. See Barkley v. Barkley (1997), 119 Ohio App.3d 155,159, 694 N.E.2d 989." State v. Wilson, 713 Ohio St.3d 382, 387-88,2007-Ohio-2202 at ¶ 25-26; 865 N.E.2d 1264, 1269-1270.
 {¶ 26} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra,78 Ohio St.3d at 387. (Quoting State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 27} In State v. Thompkins supra, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v. Miller (2002), 96 Ohio St.3d 384,2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.
 {¶ 28} In the case at bar, Appellant was convicted of trafficking in cocaine and/or aiding or abetting another in trafficking in cocaine, a violation of R.C. § 2925.03(A)(1), which provides:
 {¶ 29} "(A) No person shall knowingly do any of the following:
 {¶ 30} "(1) Sell or offer to sell a controlled substance;" *Page 8 
 {¶ 31} Appellant asserts that the State failed to prove that he sold or offered to sell crack cocaine in the case sub judice. Appellant argues, rather, that he was purchasing drugs with the confidential informant, not selling drugs to him.
 {¶ 32} A "sale" of a controlled substance includes, inter alia, the delivery, exchange, or transfer of the controlled substance "and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee." R.C. § 3719.01(AA).
 {¶ 33} In the instant case, Appellant was charged with aiding and abetting in the indictment in addition to being charged as the principal.
 {¶ 34} "To support a conviction for complicity by aiding and abetting pursuant to R.C. § 2923.03(A)(1), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." State v.Johnson, 93 Ohio St.3d 240, 754 N.E.2d 796, 2001-Ohio-1336, at syllabus.
 {¶ 35} At trial, the confidential informant testified that he arranged the purchase of crack from Appellant at the location which was being investigated by the police. He detailed the purchase, stating that Appellant offered to obtain crack cocaine for him shortly after he arrived at the house. (T. at 102, 107). He further testified that he and Appellant got into Deack's car and Appellant ultimately led them to LeRoy Williams. Appellant then handled the drug buy, giving Williams the $40.00 given to him by Deacks in exchange for three rocks of crack cocaine, two of which he then gave to Deacks. *Page 9 
 {¶ 36} Deack's testimony was corroborated by police officers who observed parts of the transaction. The transaction was also recorded on videotape, which the jury was able to review and which was admitted into evidence. The drugs were recovered by police at the conclusion of the buy.
 {¶ 37} This evidence is sufficient to prove that Appellant sold or offered to sell crack cocaine or aided and abetted another in selling or offering to sell the crack cocaine.
 {¶ 38} After viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found that Appellant was guilty of trafficking in cocaine or aiding or abetting another in trafficking in cocaine.
 {¶ 39} We hold, therefore, that the State met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support Appellant's conviction.
 {¶ 40} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 207 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 41} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury *Page 10 
did not create a manifest injustice by concluding that Appellant was guilty of the crime charged in the indictment.
 {¶ 42} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.
 {¶ 43} Accordingly, Appellant's first assignment of error is overruled.
 II. {¶ 44} In his second assignment of error, Appellant contends that the trial court erred in allowing the State of Ohio to amend the indictment after the presentation of all evidence. We disagree.
 {¶ 45} Upon review, we find that the State of Ohio did not move to amend the Indictment. It moved the trial court to amend the Bill of Particulars.
 {¶ 46} Crim. R. 7(D) states in part: "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."
 {¶ 47} In the instant case, there was no change made in the name or identity of the crime charged by the amendment. While Appellant argues that he was prejudiced by such amendment because he prepared his defense based on the original Bill of Particulars, Appellant was on notice that he was also charged as an aider and abettor pursuant to the indictment. See State v. Brown, Delaware App. No. 2005-CAA01002, 2005-Ohio-5639. Furthermore, Appellant has failed to show how his defense would have been different if said Bill of Particulars had included the aiding and abetting language. We therefore find no abuse of discretion. *Page 11 
 {¶ 48} Appellant further challenges the aiding and abetting charge claiming that such was improper because he was not charged with complicity pursuant to R.C. § 2923.03.
 {¶ 49} The Supreme Court of Ohio clarified Ohio's position on the issue of complicity in State v. Perryman (1976), 49 Ohio St.2d 14, vacated in part on other grounds sub nom, Perryman v. Ohio (1978),438 U.S. 911. The Court unequivocally approved of the practice of charging a jury regarding aiding and abetting even if the defendant was charged in the indictment as a principal. Id. The Court held that the indictment as principal performed the function of giving legal notice of the charge to the defendant. Id. Therefore, if the facts at trial reasonably supported the jury instruction on aiding and abetting, it is proper for the trial judge to give that charge. Perryman, supra at 27, 28." State v.Payton (April 19, 1990), 8th Dist. Nos. 58292, 58346.
 {¶ 50} Based on the foregoing, we find Appellant's second assignment of error not well-taken and hereby overrule same.
 III. {¶ 51} In his third assignment of error, Appellant contends that prosecutorial misconduct resulted in reversible error. We disagree.
 {¶ 52} Specifically, Appellant contends that the prosecutor improperly referred to Appellant as a "drug dealer" during the rebuttal portion of the State's closing arguments. Appellant claims that such argument was designed to confuse and mislead the jury.
 {¶ 53} In a criminal trial, the prosecutor's duty is two-fold. The prosecutor is to present the case for the State as its advocate and the prosecutor is responsible to *Page 12 
ensure that an accused receives a fair trial. Berger v. U. S. (1935),295 U. S. 78; State v. Staten (1984), 14 Ohio App. 3d 197.
 {¶ 54} Misconduct of a prosecutor at trial will not be considered grounds for reversal unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 514 N.E.2d 394;State v. Maurer (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768. The touchstone of analysis is "the fairness of the trial, not the culpability of the prosecutor." State v. Underwood (1991),73 Ohio App.3d 834, 840-841, 598 N.E.2d 822, 826, citing Smith v. Phillips
(1982), 455 U.S. 209, 219, 102 S. Ct. 940, 947, 71 L.Ed.2d 78, 87-88. An appellate court should also consider whether the misconduct was an isolated incident in an otherwise properly tried case. State v.Keenan (1993), 66 Ohio St.3d 402, 410, 613 N.E.2d 203, 209-210;Darden v. Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed.2d 144.
 {¶ 55} Appellant did not object to the comments to which he now claims error. Therefore, for those instances, we must find plain error in order to reverse.
 {¶ 56} In U.S. v. Dominguez Benitez (June 14, 2004), 542 U.S. 74,124 S.Ct. 2333, 159 L.Ed.2d 157, the court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. See Arizona v. Fulminante, 499 U. S. 279, 309-310
(1991) (giving examples). "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See Kotteakos v. United States, 328 U. S. 750 (1946). To affect *Page 13 
"substantial rights," see 28 U. S. C. § 2111, an error must have "substantial and injurious effect or influence in determining the . . . verdict." Kotteakos, supra, at 776." 124 S.Ct. at 2339. See, also,State v. Barnes (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240. See, also,State v. Fisher, 99 Ohio St.3d 127, 129, 2003-Ohio-2761 at ¶ 7,789 N.E.2d 222, 224-225. The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v.Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry
(2004), 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'" State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240, quoting State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118,802 N.E.2d at 646.
 {¶ 57} "In his rebuttal argument, the prosecutor may argue that the evidence does not support the conclusion postulated by defense counsel. He may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on. He may conclude by arguing that these circumstances make the witnesses more or less believable and deserving of more or less weight.
 {¶ 58} "Generally the credibility of various witnesses will now have been put in issue by the argument of the defense. Considerable additional latitude is due the prosecutor at this juncture, either on fair play grounds or because the comments are invited by the defense. The prosecutor should be allowed to go as far as defense *Page 14 
counsel. Thus, if the defense accuses witnesses of lying, the prosecutor should have the same right.
 {¶ 59} In the case at bar, the defense counsel, in his closing argument, stated that "[a]t no time was Gary selling anything nor was he aiding and abetting anybody in selling anything; he was trying to buy it. . .".
 {¶ 60} Defense counsel then went on to explaining the difference between buying and selling, and reviewing what the jury would see when they reviewed the videotape, telling them that his client was one of the buyers, and that the third man was the seller. (T. at 130-131).
 {¶ 61} In response, the prosecutor made the following statements:
 {¶ 62} " . . . I think I finally understand what the argument in this case is. This guy's not a drug dealer, he's a drug buyer . . . It's all a big misunderstanding.
 {¶ 63} "* * *
 {¶ 64} "No matter how they want to spin it, folks, this man seated right here next to Mr. Graham, Gary Coats, is a drug dealer. Low level, mid level, high level doesn't matter; paint it with any kind of brush you want. The guy's a drug dealer. He dealt drugs on July 26, 2006. Just this time he gave them to a guy working for the police. And because of that he's guilty." (T. at 132-136).
 {¶ 65} Upon review, we find no error plain or otherwise. No misconduct occurred because of the prosecutor's comments. Under these circumstances, there is nothing in the record to show that the jury would have found Appellant not guilty had the comment not been made on the part of the prosecution. State v. Benge, 75 Ohio St. 3d 136, 141,1996-Ohio-227. *Page 15 
 {¶ 66} In the circumstances of the case, no prejudice amounting to a denial of constitutional due process was shown.
 {¶ 67} Appellant's third assignment of error is overruled.
 {¶ 68} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.
 Wise, J. Hoffman, P. J., and Delaney, J., concur. *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
 Costs assessed to Appellant. *Page 1